UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                                Case No. 3:16-cr-133-J-34JBT

ANDREW LARRY HARRIS
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant's Motion to Suppress Physical

Evidence and Statements ("Motion") (Doc. 47), the Government's Response thereto

(Doc. 48), Defendant's post-hearing Memorandum of Law Regarding Motion to

Suppress ("Memorandum") (Doc. 71), and the Government's Response thereto

(Doc. 72). The undersigned held an evidentiary hearing on October 24, 2017. (*See*

Transcript ("Tr.") at Doc. 69.)

Defendant seeks to suppress all items, including cocaine and heroin, seized

from his vehicle and person, as well as any statements made to law enforcement,

following a traffic stop during which his vehicle was searched after a drug dog alerted

on it.[2] (Doc. 47.) Defendant argues that the seizure was illegal because law

---

[1] "Within 14 days after being served with a copy of the recommended disposition [of a motion to suppress evidence], . . . a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2). "Failure to object in accordance with this rule waives a party's right to review." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

[2] Defendant was indicted on charges of conspiracy to distribute, and possession with intent to distribute, cocaine and heroin. (Doc. 1.)

enforcement prolonged the stop in order to conduct the dog sniff.[3]  (Doc. 71.)  For

the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the

Motion be **DENIED**.

   I.      **Legal Principles**

   "Upon a motion to suppress evidence garnered through a warrantless search

and seizure, the burden of proof as to the reasonableness of the search rests with

the prosecution."  *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983).

"The Government must demonstrate that the challenged action falls within one of the

recognized exceptions to the warrant requirement, thereby rendering it reasonable

within the meaning of the [F]ourth [A]mendment."  *Id.*  "[T]he controlling burden of

proof at suppression hearings should impose no greater burden than proof by a

preponderance of the evidence."  *United States v. Matlock*, 415 U.S. 164, 177 n.14

(1974).

   As the United States Supreme Court has stated:

> [T]he tolerable duration of police inquiries in the traffic-stop
> context is determined by the seizure's "mission"—to
> address the traffic violation that warranted the stop, and
> attend to related safety concerns.  Because addressing
> the infraction is the purpose of the stop, it may "last no
> longer than is necessary to effectuate th[at] purpose."
> Authority for the seizure thus ends when tasks tied to the
> traffic    infraction    are—or    reasonably    should    have

---

[3] Although the legality of the stop itself was challenged in the Motion (Doc. 47),
Defendant challenges only the duration of the stop in the post-hearing Memorandum (Doc.
71).  Thus, Defendant has abandoned his challenge to the stop itself.  Regardless, as set
forth herein, law enforcement had three independent, legal bases for the stop.

been—completed. . . .

An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.

Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

A dog sniff, by contrast, is a measure aimed at "detect[ing] evidence of ordinary criminal wrongdoing." . . .

The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, . . . but whether conducting the sniff "prolongs"—*i.e.*, adds time to—"the stop."[4]

*Rodriguez v. U.S.*, 135 S.Ct. 1609, 1614–16 (2015) (citations omitted).

## II.    Analysis

On July 26, 2016, Trooper Joshua Earrey of the Florida Highway Patrol initiated a traffic stop on Defendant's vehicle  at the request of Detective Darrell Hickox of the Nassau County Sherriff's Office, who was surveilling Defendant in

---

[4] "[D]uring the course of a lawful traffic stop, an officer does not need any level of suspicion of criminal activity either to request a canine unit or to conduct a canine sniff." *U.S. v. Holt*, 777 F.3d 1234, 1256–57 (11th Cir. 2015).

connection with a drug investigation. (Tr. 7–10, 14, 52–57.)[5] Prior to the stop, Detective Hickox had informed Trooper Earrey that Defendant's driver's license was suspended and that Defendant was not wearing a seat belt. (Tr. 16–17, 77.) Trooper Earrey also observed that Defendant's side window tint was improper prior to the stop. (Tr. 61.)

Trooper Earrey requested a canine unit to perform a drug sniff around Defendant's vehicle either at the time the stop was initiated, or upon returning to his vehicle after making contact with Defendant. (Tr. 71.) At some point during the stop, Defendant was placed in the back seat of Trooper Earrey's patrol vehicle. (Tr. 72–73.) Trooper Charlie Kelly, a canine officer, arrived and deployed a drug sniffing dog around Defendant's vehicle. (Tr. 53, 73–74.) The dog alerted, Defendant's vehicle was searched, and drugs, including cocaine, were seized. (Tr. 74.) In addition to arresting him, Trooper Earrey issued Defendant a warning for the window tint, a ticket for the seatbelt violation, and a criminal citation for driving with a suspended license. (Tr. 78.) Trooper Earrey testified that driving with a suspended license is an arrrestable offense. (Tr. 98–99.)

Defendant argues that Trooper Earrey unnecessarily prolonged the stop to allow for the drug sniff, and that the traffic stop should have been completed prior to the drug sniff. (Doc. 71 at 7–8.) Specifically, Defendant argues that Trooper Earrey prolonged the stop by placing him in the patrol vehicle and discussing the license

---

[5] Citations to the Transcript reflect the pagination generated by CM/ECF.

suspension rather than allowing him to remain in his vehicle while the citations were issued.  (*Id.*)  The undersigned recommends that this argument be rejected for several reasons.

First, the undersigned recommends that, given the short duration of the stop, the seizure was not illegal.  The Eleventh Circuit has stated: "Where at its inception a traffic stop is a valid one for a violation of the law, we doubt that a resultant seizure of no more than seventeen minutes can ever be unconstitutional on account of its duration: the detention is too short."  *U.S. v. Hernandez*, 418 F.3d 1206, 1212 n.7 (11th Cir. 2005).  Trooper Earrey credibly testified that Trooper Kelly arrived within five to ten minutes after the traffic stop was initiated.[6]  (Tr. 71, 101.)  Defendant testified that the stop lasted ten minutes before he was placed in the patrol vehicle, and that he was in the patrol vehicle for twenty-five minutes before Trooper Kelly arrived.  (Tr. 119–22.)  The undersigned finds Trooper Earrey's testimony more credible.[7]

Next, the undersigned recommends that the dog sniff did not prolong the stop because Trooper Earrey was still completing tasks related to the traffic stop when

---

[6] The Memorandum states that "[w]hen Trooper Earrey advised Trooper Kelly of his assistance of DEA, Trooper Kelly was at the station located at Normandy and 295."  (Doc. 71 at 7.)  However, Trooper Earrey credibly testified that he did not know exactly where Trooper Kelly was when they communicated regarding the traffic stop.  (Tr. 95.)

[7] Moreover, even if the stop lasted thirty-five minutes, that alone would not render the seizure illegal.  *See U.S. v. Hardy*, 855 F.2d 753, 761 (11th Cir. 1988) (approving a stop lasting fifty minutes).

Trooper Kelly arrived.  The Eleventh Circuit has recognized that a dog sniff does not

prolong a traffic stop where "the canine units arrived while the officers still were

conducting routine records checks and preparing the traffic citations." *Holt*, 777 F.3d

at 1257.  *See also U.S. v. Gonzalez*, 275 F. App'x 930, 933 (11th Cir. 2008) (stating

that the duration of the traffic stop prior to the search was permissible where

"[d]uring this time period, Trooper Faulk asked routine questions related to the

nature of the traffic stop, and he had not yet finished filling out the traffic warning").[8]

Trooper Earrey credibly testified that although he could not recall which specific task

he was doing when Trooper Kelly arrived, he believed that he was "running

information, driver's license, criminal history check," and explaining the driver's

license suspension to Defendant, who was in the patrol vehicle.[9]  (Tr. 72–73.)

Additionally, the undersigned recommends that the placement of Defendant

in the patrol vehicle did not prolong the stop and render the seizure illegal because

Trooper Earrey continued to perform necessary tasks related to the traffic stop while

Defendant was in the patrol vehicle.  When asked specifically on cross-examination

if he held Defendant in the patrol vehicle and talked to him "to delay the process,"

Trooper Earrey stated: "No, sir.  That's not true.  I was still doing all my paperwork,

---

[8] Although unpublished Eleventh Circuit opinions are not binding precedent, they may be persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits a court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

[9] Trooper Earrey also tested the window tint prior to Trooper Kelly's arrival and found that it was illegal.  (Tr. 63, 69.)

everything that I do on a normal traffic stop, while he was sitting in my car." (Tr. 101.) Defendant testified that while he was in the patrol vehicle, Trooper Earrey tried to explain the driver's license suspension and questioned him about his criminal history. (Tr. 122–24.) Although the undersigned finds Trooper Earrey's testimony more credible, even if accepted, Defendant's testimony essentially corroborates Trooper Earrey's testimony and establishes that he was permissibly engaging in "ordinary inquiries incident to [the traffic] stop" while Defendant was in the patrol vehicle. *See Rodriguez*, 135 S.Ct. at 1615. Thus, Trooper Earrey did not prolong the stop by placing Defendant in the patrol vehicle.

Finally, even if the placement of Defendant in the patrol vehicle extended the duration of the stop, the undersigned recommends that this did not render the seizure illegal. The Eleventh Circuit has recognized that stops may be prolonged where a driver has a suspended license because it is illegal for the driver to operate the vehicle. *United States v. Vargas*, 848 F.3d 971, 974–75 (11th Cir. 2017) ("All of [Corporal] Minor's actions were taken in the lawful discharge of his duties, which included enforcement of the law requiring that any person driving a vehicle be licensed to do so. . . . What prolonged the stop was not [Corporal] Minor's desire to search the vehicle but the fact that both occupants of it could not lawfully drive it away. The district court's ruling that the seizure did not violate the Fourth Amendment was correct."). *See also U.S. v. Gonzalez*, Case No. 2:09-cr-29-FtM-29SPC, 2009 WL 3230787, at \*3 (M.D. Fla. Oct. 2, 2009) ("[D]riving on a suspended

license [is] an arrestable offense under Florida law.").

Trooper Earrey credibly testified that Defendant was placed in the patrol vehicle in part because his driver's license was suspended. (Tr. 72–73, 98–99.) He stated, among other things: "I wouldn't let him back in the driver seat because he's suspended." (Tr. 99.) Trooper Earrey also noted that he suspected that the vehicle contained cocaine, and that he would not allow Defendant in the vehicle during a dog sniff. (Tr. 98–101.) The undersigned recommends that any delay caused by the placing of Defendant in the patrol vehicle, even if it was partially based on Trooper Earrey's belief that there were drugs in Defendant's vehicle, does not render the seizure illegal because Defendant could not lawfully operate his vehicle. *See Vargas*, 848 F.3d at 974–75. *See also Gonzalez*, 275 F. App'x at 933–34 (recognizing that placing a driver in a patrol vehicle during a vehicle search is "entirely consistent with the well-settled principle that officers conducting a traffic stop may take such steps as are reasonably necessary to protect their personal safety") (quotations omitted).[10]

## III. Conclusion

For the reasons set forth above, the undersigned recommends that the Government proved by a preponderance of the evidence that the dog sniff did not

---

[10] Because the undersigned recommends that the duration of the traffic stop, which was ongoing at the time Trooper Kelly arrived, was permissible, the undersigned need not address whether Trooper Earrey had a reasonable suspicion of criminal activity that would have allowed him to conduct a longer investigation.

prolong the stop.  Thus, the undersigned recommends that the subject search and seizure was lawful, and that the Motion be denied.

Accordingly, it is respectfully **RECOMMENDED** that:

The Motion (**Doc. 47**) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida, on December 8, 2017.

_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record